# EXHIBIT A

**HANLY & CONROY LLP**
**Attorneys for Plaintiffs**
**415 Madison Avenue**
**New York, New York 10017**
**(212) 401-7600**
**Jayne Conroy (JC-8611)**
**Paul J. Hanly, Jr. (PH-5486)**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MARY BAVIS, Individually, and as Personal Representative of the Estate of MARK BAVIS, Deceased, )<br><br>Plaintiffs, )<br><br>vs. )<br><br>UNITED AIRLINES, INC., )<br>A Delaware Corporation )<br><br>UAL CORPORATION, )<br>A Delaware Corporation )<br><br>AMERICAN AIRLINES, INC., )<br>A Delaware Corporation, )<br><br>AMR CORPORATION, )<br>A Delaware Corporation )<br><br>US AIRWAYS, INC., )<br>A Delaware Corporation, )<br><br>COLGAN AIR, INC., )<br>A Virginia Corporation, )<br><br>ALASKA AIRLINES, INC., )<br>An Alaska Corporation, )<br><br>AMERICA WEST AIRLINES, INC., )<br>A Delaware Corporation, )<br><br>AMERICAN TRANS AIR, INC., )<br>An Indiana Corporation, ) | CASE NUMBER:  02-CV-7154 (AKH)<br><br><br><br>SECOND AMENDED COMPLAINT FOR WRONGFUL DEATH AND SURVIVAL<br><br><br><br>Plaintiffs Demand a Jury Trial |

CONTINENTAL AIRLINES, INC.,                    )
A Delaware Corporation,                         )
                                                )
DELTA AIR LINES, INC.,                          )
A Delaware Corporation,                         )
                                                )
MIDWAY AIRLINES CORPORATION,                    )
A Delaware Corporation,                         )
                                                )
NORTHWEST AIRLINES CORPORATION,                 )
A Delaware Corporation,                         )
                                                )
AIRTRAN AIRWAYS, INC.,                          )
A Delaware Corporation                          )
                                                )
HUNTLEIGH USA CORPORATION,                      )
A Missouri Corporation,                         )
                                                )
ICTS INTERNATIONAL NV,                          )
A Netherlands Corporation,                      )
                                                )
GLOBE AVIATION SERVICES,                        )
A Delaware Corporation,                         )
                                                )
BURNS INTERNATIONAL SECURITY                    )
SERVICES CORPORATION,                           )
A Delaware Corporation,                         )
                                                )
PINKERTON'S INC.,                               )
A Delaware Corporation,                         )
                                                )
SECURITAS AB,                                   )
A Sweden Corporation,                           )
                                                )
THE BOEING COMPANY,                             )
A Delaware Corporation,                         )
                                                )
MASSACHUSETTS PORT AUTHORITY,                   )
A Governmental Entity,                          )
                                                )
                         Defendants.            )

2

Plaintiff, Mary Bavis, in her own right, on and as Personal Representative of the Estate of Mark Bavis, Deceased, complaining of the Defendants herein, upon information and belief, allege as follows:

## NATURE OF THE CAUSE OF ACTION

1.       This is an action for damages arising from injuries suffered by Mark Bavis during the hijacking of United Air Lines Flight 175 and for his tragic death following the aircraft's crash into Two World Trade Center on September 11th, 2001.  For several years prior to September 11, 2001, the aviation industry, including United Air Lines, Inc., and the Airline Defendants named herein, Airline Transportation Association, Huntleigh USA Corporation, Globe Aviation Services and the Security Company Defendants named herein, and the public authority or Airport Defendant named herein breached their duties of care resulting in a failure to implement adequate aviation security measures.  The defendants named herein had actual or constructive knowledge of the fact that terrorist groups and individuals, including Osama bin Laden, had publicly proclaimed a pathological hatred of the United States and its citizens and vowed to kill innocent Americans, destroy American institutions, and that the U. S. aviation system was a likely and foreseeable target of that violence.

2.       The risk of harm to airline passengers and crew members was heightened by the fact these defendants had knowledge of dangerous long-standing flaws in airline and airport security, that commercial passenger aircraft were demonstrated to be vulnerable to attacks by persons intent upon causing death and injury in furtherance of their ideologies, and yet the defendants failed to take reasonable action to protect passengers from harm in light of that knowledge and the risk presented.

3

3.    These defendants also knew or should have recognized what numerous evaluations disclosed; namely, that the airline and airport security systems and those who implemented, operated and maintained them routinely failed to detect dangerous and deadly weapons capable of causing injury and/or death passing through so-called security checkpoints. These defendants are jointly and severally liable for the wrongful deaths, injuries and damages resulting from the September 11 attacks because they were negligent, careless, wanton and reckless in failing to develop, implement, and maintain adequate airline and airport security systems at Logan International Airport, Boston, Massachusetts (hereinafter "Logan Airport"). These defendants failed to implement reasonable and effective security measures prior to September 11, 2001 to deter and to prevent hijackers from carrying dangerous and deadly weapons aboard United Air Lines Flight 175 capable of causing injury and/or death, and failed to take the necessary measures to protect and secure the cockpit of Flight 175 from intrusion by terrorist who sought to gain control of the aircraft and cause it to crash.

## JURISDICTION AND VENUE

4.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331; the Air Transportation Safety and Systems Stabilization Act, Public Law No. 107-42, 115 Stat. 230 (the "Act"), Section 408(b)(1)(3). This Court also has jurisdiction under 28 U.S.C. § 1332, in that the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs, and there is diversity of citizenship between the parties. Jurisdiction is further based upon the supplemental provisions of 28 U.S.C. § 1367. This Court has personal jurisdiction over the Defendants herein.

5.    Venue is appropriate in this forum based on Pub. L. HR 2926, Section 408(b)(1)(3).

4

## PARTIES

### Plaintiffs

6.      Plaintiff, Mary Bavis is the mother of Mark Bavis, who was killed on United Flight 175 during its hijacking and eventual crash into Two World Trade Center. Mark Bavis was a passenger on United Flight 175. Plaintiff brings this action in her own right, and on behalf of the Estate of Mark Bavis. Plaintiff Mary Bavis is a resident of the State of Massachusetts.

### Defendants

#### Airline Defendants

7.      Defendant United Air Lines, Inc. (hereinafter "United") is a Delaware corporation whose principal place of business is located at 1200 East Algonquin Road., Elk Grove Township, Illinois, 60007. United is a common carrier. At all times pertinent to the Complaint, United owned, operated and controlled the subject aircraft and was responsible through its officers, employees and agents for the safety and security of United Flight 175. United was also jointly, severally, and contractually responsible through its agents, employees and contractors for maintaining the security of all aircraft operating out of the Logan Airport.

8.      Defendant UAL Corporation (hereinafter "UAL") is a corporation duly organized and existing under the laws of Delaware and maintains its principal place of business in Illinois.

9.      Defendant UAL is engaged in the business of air transportation of passengers for hire.

10.      Defendant UAL is the parent corporation of and exercised control over its wholly-owned subsidiary, defendant United.

11.     Defendant UAL, as the parent corporation of its wholly-owned subsidiary United, is liable for the negligent, reckless and wanton acts of United.  (UAL and United are collectively referred to as "United").

12.     Defendant American Airlines, Inc. (hereinafter "American") is a Delaware corporation whose principal place of business is 9955 AirTran Boulevard, Orlando, Florida, 32827.  American is a common carrier.  At all times pertinent to the Complaint, American owned, operated and controlled aircraft operating out of Logan Airport and was jointly, severally, and contractually responsible through its agents, employees and contractors for maintaining the security of all aircraft operating out of the Logan Airport.

13.     Defendant AMR Corporation (hereinafter "AMR") is a corporation organized and existing under the laws of Delaware and maintains its principal place of business in Texas.

14.     Defendant AMR is engaged in the business of air transportation of passengers for hire.

15.     Defendant AMR is the parent corporation of and exercised control over its wholly-owned subsidiary, defendant American.

16.     Defendant AMR, as the parent corporation of its wholly-owned subsidiary American, is liable for the negligent, reckless and wanton acts of American.  (AMR and American are collectively referred to as "American").

17.     Defendant Colgan Air, Inc. (hereinafter "Colgan") is a corporation duly organized and existing under the laws of Virginia and maintains its principal place of business in Virginia. At all times pertinent to the Complaint, Colgan was a common carrier which operated a commercial airline transporting passengers and crew members from the Portland Jetport.  Colgan

was jointly, severally, and contractually responsible through its agents, employees and contractors for maintaining the security of all aircraft operating out of the Portland Jetport.

18.    Defendant US Airways, Inc. (hereinafter "US Airways") is a Delaware corporation whose principal place of business is 2345 Crystal Drive, Arlington, Virginia, 22227. At all times pertinent to the Complaint, US Airways was a common carrier which operated a commercial airline transporting passengers and crew members from Logan Airport. US Airways was jointly, severally, and contractually responsible through its agents, employees and contractors for maintaining the security of all aircraft operating out of the Logan Airport.

19.    Defendant AirTran Airways, Inc. (hereinafter "AirTran") is a corporation duly organized and existing under the laws of and maintaining its principal place of business Florida. At all times pertinent to the Complaint, AirTran was a common carrier which operated a commercial airline transporting passengers and crew members from the Logan Airport. AirTran was jointly, severally, and contractually responsible through its agents, employees and contractors for maintaining the security of all aircraft operating out of the Logan Airport.

20.    Defendant Alaska Airlines, Inc. (hereinafter "Alaska Airlines") is an Alaska corporation whose principal place of business is located at 19300 Pacific Hwy S, Seattle, Washington 98168. At all times pertinent to the Complaint, Alaska Airlines was a common carrier which operated a commercial airline transporting passengers and crew members from the Logan Airport. Alaska Airlines was jointly, severally, and contractually responsible through its agents, employees and contractors for maintaining the security of aircraft operating out of the Logan Airport.

21.    Defendant America West Airlines, Inc. (hereinafter "America West") is a Delaware corporation whose principal place of business is located at 111 West Rio Salado

Parkway, Tempe, Arizona 85281. At all times pertinent to the Complaint, America West was a common carrier which operated a commercial airline transporting passengers and crew members from the Logan Airport. America West was jointly, severally, and contractually responsible through its agents, employees and contractors for maintaining the security of aircraft operating out of the Logan Airport.

22.     Defendant American Trans Air, Inc. is an Indiana corporation whose principal place of business is 7337 West Washington Street, Indianapolis, Indiana, 46231. At all times pertinent to the Complaint, was a common carrier which operated a commercial airline transporting passengers and crew members from the Logan Airport. American Trans Air, Inc., was jointly, severally, and contractually responsible through its agents, employees and contractors for maintaining the security of all aircraft operating out of the Logan Airport.

23.     Defendant Continental Airlines, Inc. (hereinafter "Continental") is a Delaware corporation whose principal place of business is located at 1600 Smith Street, 3303D, Dept. HQSEO, Houston, Texas 77002. At all times pertinent to the Complaint, Continental was a common carrier which operated a commercial airline transporting passengers and crew members from the Portland Jetport. Continental was jointly, severally, and contractually responsible through its agents, employees and contractors for maintaining the security of aircraft operating out of the Portland Jetport.

24.     Defendant Delta Air Lines, Inc. (hereinafter "Delta") is a Delaware corporation whose principal place of business is located at P.O. Box 45852, Dept. 852, Atlanta, Georgia 30320. At all times pertinent to the Complaint, Delta was a common carrier which operated a commercial airline transporting passengers and crew members from the Logan Airport. Delta

8

was jointly, severally, and contractually responsible through its agents, employees and contractors for maintaining the security of aircraft operating out of the Logan Airport.

26. Defendant Midway Airlines Corporation (hereinafter "Midway") is a Delaware corporation whose principal place of business is located at 2801 Slater Road, Suite 200, Morrisville, NC 27560. At all times pertinent to the Complaint, Midway was a common carrier which operated a commercial airline transporting passengers and crew members from the Logan Airport. Midway was jointly, severally, and contractually responsible through its agents, employees and contractors for maintaining the security of aircraft operating out of the Logan Airport.

26. Defendant Northwest Airlines Corporation (hereinafter "Northwest") is a Delaware corporation whose principal place of business is located at 5101 Northwest Drive, St. Paul, Minnesota 55111-3034. At all times pertinent to the Complaint, Northwest was a common carrier which operated a commercial airline transporting passengers and crew members from the Portland Jetport. Northwest was jointly, severally, and contractually responsible through its agents, employees and contractors for maintaining the security of aircraft operating out of the Portland Jetport.

## Security Company Defendants

27. Defendant Huntleigh USA Corporation, (hereinafter "Huntleigh") is a Missouri corporation whose principal place of business is located in Missouri. At all times pertinent to the Complaint, Huntleigh was hired by the defendants herein to provide and maintain the security at Portland Jetport in Portland, Maine and Logan Airport in Boston, Massachusetts.

28. Defendant ICTS International NV, (hereinafter "ICTS") is a business entity of unknown form duly organized and existing under the laws of The Netherlands and maintains its

9

principal place of business in The Netherlands. ICTS is the parent corporation of and exercised control over its wholly-owned subsidiary, defendant Huntleigh. ICTS, as the parent corporation of its wholly-owned subsidiary Huntleigh, is liable for the negligent, reckless and wanton acts of Huntleigh.

29.     Defendant Globe Aviation Services, (hereinafter "Globe") is a corporation duly organized and existing under the laws of Delaware and maintains its principal place of business in Texas. At all times pertinent to the Complaint, Globe was hired by the defendants herein to provide and maintain the security at Logan Airport in Boston, Massachusetts and the security at Portland Jetport in Portland, Maine.

30.     Defendant Burns International Security Services Corporation, (hereinafter "Burns") is a corporation duly organized and existing under the laws of Delaware and Maintains its principal place of business in Texas. Defendant Burns is the parent corporation of and exercised control over its wholly-owned subsidiary, defendant Globe. Defendant Burns, as the parent corporation of its wholly-owned subsidiary Globe, is liable for the negligent, reckless and wanton acts of Globe.

31.     Defendant Pinkerton's Inc., (hereinafter "Pinkerton") is a corporation duly organized and existing under the laws of Delaware and maintains its principal place of business in Illinois. Defendant Pinkerton is the parent corporation of and exercised control over its wholly-owned subsidiaries, defendants Globe and Burns. Defendant Pinkerton, as the parent corporation of its wholly-owned subsidiaries Globe and Burns, is liable for the negligent, reckless and wanton acts of Globe and Burns.

32.     Defendant Securitas AB, (hereinafter "Securitas") is a business entity of unknown form duly organized and existing under the laws of Sweden and maintains its principal place of

business in Sweden. Defendant Securitas is the parent corporation of and exercised control over its wholly-owned subsidiaries, defendants Globe, Burns and Pinkerton. Defendant Securitas, as the parent corporation of its wholly-owned subsidiaries Globe, Burns and Pinkerton, is liable for the negligent, reckless and wanton acts of Globe, Burns and Pinkerton.

### Aircraft Defendant

33.    Defendant Boeing Co. (hereinafter "Boeing") is a Delaware corporation whose principal place of business is located at 7755 East Marginal Way South, Seattle, Washington, 98108. Boeing designed and manufactured the Boeing 767-223ER, tail number N612UA, which operated on September 11, 2001, as United Airlines Flight 175.

### Airport Defendant

34.    Defendant Massachusetts Port Authority (Massport) at all times pertinent, was and is a government entity duly organized and existing under the laws of Massachusetts and maintaining its principal place of business in Boston, Massachusetts.

### Aviation Industry

35.    The Defendants herein are cumulatively referred to as the aviation industry.

### FACTUAL ALLEGATIONS

36.    On September 11, 2001, Defendant United was a common carrier which operated the Boeing manufactured 767-222 aircraft, tail number N612UA, as United Flight 175, offering non-stop service from Logan to Los Angeles International Airport. United is a common carrier engaged in the business of transporting passengers and crew members by air and operates regularly scheduled flights from the Logan Airport and is responsible for the airline and airport

11

security systems at the Logan Airport.  At all times pertinent to this Complaint, United owned, operated and supervised United Flight 175 through its agents, employees and contractors.

37.    On the morning of September 11, 2001, United Flight 175 (hereinafter "Flight 175") was scheduled to depart from Logan Airport in Boston, Massachusetts and arrive at Los Angeles International Airport in California later that day.

38.    At all relevant times, United Air Lines, through its agents, servants, employees and/or representatives owned, operated, controlled, manned, supervised, monitored and directed the subject aircraft.  United Air Lines also jointly and severally shared responsibility for the boarding area and security system through which the terrorists passed, gained access to, and boarded the aircraft.

39.    At all relevant times, Huntleigh, Globe, and the other security company defendants named herein, through their agents, servants, employees and/or representatives owned, operated, manned, supervised, monitored and directed the security and screening system, through which the terrorists passed, gained access to, and boarded the aircraft.

40.    In addition to United Air Lines, at all relevant times, the airline defendants named herein, through their agents, servants, employees and/or representatives contracted for, owned, operated, manned, supervised, monitored and/or otherwise directed and controlled the security and screening system, through which the terrorists passed, gained access to and boarded the aircraft.

41.    The Airline Defendants jointly entered a contractual relationship with Globe and/or Huntleigh to provide security screening services at the Logan Airport.  The Security Company Defendants served as the agent of the Airline Defendants.  The Airline Defendants,

through Huntleigh and/or Globe jointly managed, supervised, and controlled the security screening system through which the terrorists were allowed to freely pass.

42.    At all relevant times, the Airport Defendant, through its agents, servants, employees and/or representatives, owned, operated, manned, supervised, monitored and directed the security and screening systems of the Logan Airport, through which the terrorists passed, gained access to, and boarded the aircraft.  Massport is a public body charged with duties related to the public welfare and security of the Logan Airport.

43.    Defendants' grossly inadequate security measures and deficient passenger screening system were insufficient to combat the risk of terrorist activity on domestic flights. The risk of hijacking and terrorism was well known by the Defendants and should have been acted upon.  The risk of terrorist activity was reasonably foreseeable and even insured against.

44.    The aviation industry has long been on notice of the threat of terrorism, and knew or should have known that enhanced safety measures would deter the threat of risk of terrorist hijacking.  The aviation industry did not implement such safety measures.

45.    The Airline Defendants and the Airport Defendant knew or should have known that The Security Defendants failed to adequately train their employees, hired illegal aliens, failed to conduct required criminal background checks and routinely failed to perform adequately in undercover security evaluations.

46.    The conduct of the Defendants in their respective acts of commission and omission constituted a violation of the applicable state and federal rules, regulations and laws, including but not limited to the Air Transportation Security Act of 1974.

47.    On the morning of September 11, 2001, five al Qaeda terrorists (or "hijackers"), succeeded in transporting deadly weapons through the passenger screening and security system,

maintained by the Airline Defendants, the Airport Defendant and the Security Defendants, and onto the aircraft manufactured by Boeing. These young, Middle Eastern, male terrorists were freely permitted to board United Flight 175 transporting dangerous and deadly weapons.

48.    Shortly after United Flight 175 departed from the Logan Airport at 8:14 a.m. on September 11, 2001, the hijackers seized control of the aircraft. The hijackers were able to gain access to and seize control of the aircraft as a direct and proximate result of the aviation industry's repeated failure to implement basic and fundamental safety features and security measures which would have prevented the hijackers from ever accomplishing their mission.

49.    The terrorists used dangerous and deadly weapons in storming the aircraft's cockpit, overtaking the pilots, terrorizing the passengers, and hijacking United Flight 175. The negligence of the defendants put in place wholly inadequate safety measures which allowed the tragic events to occur that led to the injury and death of Mark Bavis. As a result of being allowed to freely board Flight 175, the terrorist hijackers took and maintained control of the aircraft, causing Flight 175 to deviate from its scheduled flight path, and to intentionally crash into Two World Trade Center.

50.    As the result of the violent impact and crash of the Flight 175 into Two World Trade Center, Mark Bavis herein suffered serious bodily harm, physical injury and death.

## COUNT ONE

### (Negligence of American)

51.    Plaintiffs incorporate by reference all prior allegations.

52.    At all times pertinent to this Complaint, it was the duty of American and AMR, by and through their officers, agents, employees or designees, to exercise the highest degree of care in the operation, control maintenance and supervision of the subject airports and aircrafts for

the safety and security of their passengers, crew members and of the general public on the ground.

53.    At all times pertinent to this Complaint, it was the duty of American and AMR as the owners and operators of the aircraft, to ensure that the aircrafts were secure.  In providing passenger screening and the security system for air transportation common carriers at Logan airport and American and AMR owed a duty to the public, passengers and crew to act with the utmost degree of care in the operation, control, maintenance and supervision of its aircraft, the passenger screening processes and security systems.

54.    The failure of American and AMR to adequately perform their duties, in providing security services and a reasonably secure aircraft constitute a breach of its duties.

55.    The access of the hijackers to the subject aircrafts was a direct and proximate result of American's and AMR's breaches of duty, negligence, carelessness and recklessness in the ownership, operation, management, supervision, and maintenance of the subject aircraft and the passenger screening processes and security systems at Logan Airport.  The personal injury and wrongful death of Mark Bavis was proximately caused by the breach of duty care and negligence of American and AMR.

56.    As a result of the foregoing, Mark Bavis suffered severe physical personal injury, emotional trauma, including fear of impending death and wrongful death, and his estate is entitled to damages in an amount to be determined at trial.

57.    The Plaintiffs have suffered and will continue to suffer mental anguish, grief and loss, loss of income and support, loss of services, companionship and care, and are entitled to damages.

**COUNT TWO**

15

**(Negligence of Airline Defendants)**

58.    Plaintiffs incorporate by reference all prior allegations.

59.    At all times relevant to this Complaint, each of the Airline Defendants were common carriers which operated commercial airlines transporting passengers and crew members from Logan Airport.

60.    Each of the Airline Defendants has an independent and non-delegable duty to maintain the security of its aircraft.  In furtherance of this duty, the Airline Defendants acted together and in concert in contracting with Huntleigh and/or Globe and/or the Security Company Defendants to provide security services for all flights departing from Logan Airport.

61.    The Airline Defendants each had a duty, or voluntarily undertook a duty, to exercise the highest degree of care for the safety and security of all passengers and crew members passing through security at Logan Airport.

62.    The Airline Defendants each knew or should have known that the security screening system it supervised, maintained and controlled through Huntleigh and/or Globe and/or the Security Company Defendants was grossly inadequate and posed a severe danger to its passengers, crew members and to the public.  The Airline Defendants knew or should have known that the Huntleigh and Globe security systems were a facade and a "sieve," frequently unable to detect even the most obvious of dangerous weapons in numerous undercover evaluations.

63.    The Airline Defendants knew or should have known that its agents and security subcontractors, including Huntleigh and Globe, provided screening services which were grossly inadequate and that such inadequacies posed severe dangers to its passengers, to crew members and to the public, including Mark Bavis.

16

64.    The Airline Defendants' failure to remedy recognized and repeated security lapses was a reckless, careless and negligent breach of their respective duties of care to all passengers, crew members and the public, including Mark Bavis.

65.    As a direct and proximate result of the Airline Defendants' breach of their duties of care, Logan Airport was not secure, allowing the hijackers to board United Flight 175, thereby causing Mark Bavis's injuries and death.

66.    As a result of the foregoing, Mark Bavis suffered severe physical personal injury, emotional trauma, including fear of impending death and wrongful death, and his estate is entitled to damages in an amount to be determined at trial.

67.    The Plaintiffs have suffered and will continue to suffer mental anguish, grief and loss, loss of income and support, loss of services, companionship and care, and are entitled to damages.

## COUNT THREE

### (Negligence of Security Company Defendants)

68.    Plaintiffs incorporate by reference all prior allegations.

69.    At all times relevant to this Complaint, Security Company Defendants owned, operated and controlled, through its employees and agents, the security and passenger screening system in place at Logan Airport on September 11, 2001.

70.    The Security Company Defendants owed all passengers, crew and the general public the highest duty of care in preventing passengers from carrying dangerous weapons through its security system and services.

71.    The Security Company Defendants recklessly and negligently breached its duty of care by failing to adequately train its employees, hire qualified personnel, or correct known

17

security lapses.   The Security Company Defendants ultimately failed to prevent terrorists and weapons from passing through the security system at Logan Airport on September 11, 2001.

72.      At all times pertinent to this Complaint, The Security Company Defendants knew or should have known that its security screening program and personnel were grossly inadequate. The Security Company Defendants routinely failed to detect dangerous weapons in undercover investigations and was repeatedly found to be remiss in carrying out their duties and the duties of the aviation industry.   The Security Company Defendants knew or should have known that such inadequacies posed severe dangers to airline passengers, crew members and the general public, including Mark Bavis.

73.      As a direct and proximate result of The Security Company Defendants' breach of its duties of care, young, male, middle eastern terrorists were permitted to board and hijack United Flight 175, thereby causing the crash of the Flight 175 aircraft and the suffering, injuries and death of Mark Bavis.

74.      As a result of the foregoing, Mark Bavis suffered severe physical personal injury, emotional trauma, including fear of impending death and wrongful death, and his estate is entitled to damages in an amount to be determined at trial.

75.      The Plaintiffs have suffered and will continue to suffer mental anguish, grief and loss, loss of income and support, loss of services, companionship and care, and are entitled to damages.

## COUNT FOUR

### (Negligence of Airport Defendant)

76.      Plaintiffs incorporate by reference all prior allegations.

77.    At all times relevant to this Complaint, the Airport Defendant (or Massport) owned, operated and controlled, through their employees and agents, the security and passenger screening systems in place at Logan Airport on September 11, 2001.

78.    Airport Defendant owed all passengers, crew members and the general public the highest duty of care in preventing passengers from carrying dangerous weapons through its security systems and services.

79.    Airport Defendant recklessly and negligently breached its duty of care by failing to adequately train its employees, hire qualified personnel, or correct known security lapses. Airport Defendant ultimately failed to prevent young, male, Middle Eastern Islamic terrorists from passing through their security systems at Logan Airport on September 11, 2001, transporting dangerous, deadly, and prohibited weapons.

80.    At all times pertinent to this Complaint, Airport Defendant knew or should have known that security screening programs and personnel in place were grossly inadequate. The Airport Defendant knew or should have known that these gross inadequacies posed severe foreseeable danger and risk to airline passengers, crew members and the general public, including Mark Bavis.

81.    As a direct and proximate result of Airport Defendant's breach of its duty of care, terrorists were permitted to board United Flight 175, and to board, hijack and terrorize United Flight 175, thereby causing the crash of the aircraft and the injuries and death of Mark Bavis.

82.    As a result of the foregoing, Mark Bavis suffered severe physical personal injury, emotional trauma, including fear of impending death and wrongful death, and his estate is entitled to damages in an amount to be determined at trial.

83.    The Plaintiffs have suffered and will continue to suffer mental anguish, grief and loss, loss of income and support, loss of services, companionship and care, and are entitled to damages.

## COUNT FIVE

### (Strict Liability of Boeing)

84.    Plaintiffs incorporate by reference all prior allegations.

85.    A usual and customary component of Defendant Boeing's business is the design and manufacture of commercial aircraft to be used by common carriers to transport passengers and crew members.

86.    Defendant Boeing designed and manufactured the 767-222 aircraft, tail number N612UA, which operated on September 11, 2001 as United Flight 175.

87.    The aforementioned aircraft was being used in an intended and foreseeable manner on the morning of September 11, 2001.

88.    Defendant Boeing defectively designed the door and accompanying locks to the cockpit of the 767-222 aircraft.  The design in use on September 11, 2001, in the aircraft in question, was unreasonably dangerous in that it could easily be penetrated by any determined passenger.  The cockpit doors were not secure and the accompanying locks were insufficient to deter or prevent a hijacking attack.  Alternative and safer designs were available for a nominal increase in cost which would have prevented the ability to access the cockpit of United Flight 175.

89.    This defective design permitted ready access to the cockpit.  Boeing's defective design and failure to design and provide secure cockpit doors was a proximate cause of the injuries and death of Mark Bavis.

90.    As a result of the foregoing, Mark Bavis suffered severe physical personal injury, emotional trauma, including fear of impending death and wrongful death, and his estate is entitled to damages in an amount to be determined at trial.

91.    The Plaintiffs have suffered and will continue to suffer mental anguish, grief and loss, loss of income and support, loss of services, companionship and care, and are entitled to damages.

## COUNT SIX

### (Negligence of Boeing)

92.    Plaintiffs incorporate by reference all prior allegations.

93.    Defendant Boeing designed and manufactured the 767-222 aircraft, tail number N612UA, operated on September 11, 2001 as United Flight 175, and similar aircraft.

94.    Defendant Boeing owed the public a duty of care in safely designing aircraft, including the duty of providing safety features including secure cockpit doors and locks.

95.    Defendant Boeing breached its duty of care by failing to design or provide adequately safe or secure cockpit doors and locks on aircraft, including the 767-222 aircraft, in a manner which would prevent hijackers and/or other dangerous passengers from easily accessing the cockpit. The cockpit doors on United Flight 175 did not adequately protect the pilots and crew. In addition, they were not secure and the only locks were insufficient to deter or prevent access and a hijacking attack.

96.    Defendant Boeing knew or should have known of the risks of hijackers and air piracy and that the design of its cockpit doors was inadequate. Defendant Boeing's failure to remedy this defect was a breach of its duty of care. Defendant Boeing knew or should have

21

known that alternative and safer designs were available for a nominal increase in cost which would have prevented cockpit access.

97.    Boeing's breach of its duty of care in the design and manufacture of the 767-222 permitted the terrorists to easily gain access to the Flight 175 cockpit on September 11, 2001 and was a proximate cause of the injuries and death of Mark Bavis.

98.    As a result of the foregoing, Mark Bavis suffered severe physical personal injury, emotional trauma, including fear of impending death and wrongful death, and his estate is entitled to damages in an amount to be determined at trial.

99.    The Plaintiffs have suffered and will continue to suffer mental anguish, grief and loss, loss of income and support, loss of services, companionship and care, and are entitled to damages.

## COUNT SEVEN

### (Breach of Warranty of Boeing)

100.    Plaintiffs incorporate by reference all prior allegations.

101.    A usual and customary component of Defendant Boeing's business is the design and manufacture of commercial aircraft to be used by common carriers to transport passengers and crew.

102.    Defendant Boeing designed, manufactured and placed into the stream of commerce the 767-222 aircraft, tail number N612UA, which operated on September 11, 2001 as United Flight 175.

103.    In placing the aforementioned aircraft into the stream of commerce, Boeing warranted that the aircraft was reasonably safe for its intended use as a commercial aircraft to be used for transporting passengers and crew.

22

104.    The aforementioned aircraft was being used in an intended and foreseeable manner on the morning of September 11, 2001.

105.    As set forth above, the aircraft was not reasonably safe for its intended use and Boeing breached its warranty by placing the aircraft into the stream of commerce.

106.    Because death and injury are foreseeable results of airplane crashes, Plaintiffs were among those whom Boeing might reasonably have expected to be affected by the plane and its unsafe manufacture and design.

107.    As a result of the foregoing, Mark Bavis suffered severe physical personal injury, emotional trauma, including fear of impending death and wrongful death, and his estate is entitled to damages in an amount to be determined at trial.

108.    The Plaintiffs have suffered and will continue to suffer mental anguish, grief and loss, loss of income and support, loss of services, companionship and care, and are entitled to damages.

## **COUNT EIGHT**

### **(Wrongful Death)**

109.    Plaintiffs incorporate herein by reference all prior allegations.

110.    Plaintiffs bring this action for the wrongful death of Mark Bavis proximately caused by the Defendants' negligence and strict liability.

111.    Plaintiffs are entitled to recover monetary damages from Defendants for the wrongful death of Mark Bavis.  Plaintiffs are entitled to recover full damages incurred, as fair and just compensation for the injuries, resulting from this wrongful death.

112.    The injuries, trauma, damages, and wrongful death suffered by Plaintiffs were proximately caused by the negligence of the Defendants.

23

113.    As a direct and proximate result of the wrongful death of Mark Bavis, his estate and heirs have suffered and will continue to suffer emotionally and financially, having been deprived of all future aid, income, assistance, wages, support, services, comfort, companionship, affection and financial support.

114.    As a further result of acts of the Defendants, Plaintiffs have incurred actual damages including but not limited to out of pocket expenses, lost wages, lost potential earnings and other expenses and losses for which it is entitled to full and fair recovery.

## COUNT NINE

### (Survival)

115.    Plaintiffs incorporate herein all prior allegations.

116.    As a result of the reckless, grossly negligent and/or negligent acts of Defendants as described herein, Mark Bavis was placed in a severe, prolonged, extreme, and traumatic apprehension of harmful, offensive unwarranted bodily contact, injury and assault. Mark Bavis suffered intensely severe and offensive harmful bodily contact, personal injury and battery; including but not limited to extreme trauma, fear, terror, anxiety, emotional and psychological distress, knowledge of impending death and related physical and emotional trauma and physical pain.

117.    Mark Bavis was mentally, physically and emotionally damaged, harmed, trapped, and falsely imprisoned prior to his personal physical injury and death.

118.    As a result of Defendants' negligent conduct, Mark Bavis endured pain and suffering, severe trauma, fear, anxiety, physical mental and emotional distress and anguish and other items of damages to be shown at trial.

119.    The Estate of Mark Bavis seeks and is entitled to survival damages for the intense pain and suffering, physical, emotional, and psychological trauma inflicted upon him prior to his death.

## COUNT TEN

### (Claim for Wrongful Death and Survival
### Damages Based on Res Ipsa Loquitur)

120.    Plaintiffs incorporate by reference all prior allegations.

121.    Defendants had exclusive management and control of the aircraft and airport security systems, through with the terrorists penetrated, and whose negligence resulted in damages to and death of Mark Bavis.

122.    The penetration of the aviation security systems and Mark Bavis's death as set forth herein, are such that would not have occurred had the defendants exercised reasonable and ordinary care in the maintenance and operation of basic security.

123.    Because of the Defendants' exclusive control and management of aviation security, Defendants are possessed of superior, if not exclusive, access to information concerning the precise cause of the hijackings.  The Defendants were in the position to prevent hijackings, knew full well the risk of hijackings, and failed to act to prevent them.

124.    The penetration of the aviation security system was not due to any action or contribution on the part of Mark Bavis.

125.    As a result of the foregoing, Mark Bavis suffered severe physical personal injury, emotional trauma, including fear of impending death and wrongful death, and his estate is entitled to damages in an amount to be determined at trial.

126.    The Plaintiffs have suffered and will continue to suffer mental anguish, grief and loss, loss of income and support, loss of services, companionship and care, and are entitled to damages.

## COUNT ELEVEN

### (Negligent Infliction of Emotional Distress)

127.    Plaintiffs incorporate by reference all prior allegations.

128.    Defendants owe a duty to the public, passengers and crew and to the Plaintiffs to adequately safeguard air travel. Defendants undertook this duty freely.

129.    Defendants knew or should have known that their conduct and actions in failing to implement adequate security systems would lead to increased danger, risk of catastrophic injury, and severe, debilitating emotional distress to its passengers, to the crew and to the Plaintiffs. The Defendants knew or should have known that the failure to implement adequate safety and security measures placed the public in extreme danger, increasing the risk of injury and the resulting emotional distress.

130.    The conduct and actions of the Defendants were done in breach of their duties and in negligent disregard for the rights and lives of the general public and of those killed and injured on September 11, 2001.

131.    The course of conduct undertaken by the aviation industry in failing to safeguard airports and aircraft was such that it was reasonably foreseeable to result in the death, injury and suffering of innocent people, both in the air and on the ground. The repeated failure to implement adequate security culminated in injury of and damage to Mark Bavis resulting in severe, continuing, permanent mental, physical and emotional distress and suffering, and resulting loss of consortium and services to the Plaintiffs.

26

132.    As a direct and proximate cause of Defendants' negligent, grossly negligent and/or reckless misconduct and disregard for public and aviation safety in breach of their duty, Plaintiffs have suffered severe emotional distress and ongoing psychiatric injuries and damages.

133.    Defendants, by reason of their negligent breach of duty and/or recklessness, negligently inflicted emotional distress upon the Plaintiffs.

### Demand for Punitive Damages Against All Defendants

134.    Plaintiffs incorporate by reference all prior allegations.

135.    Defendants knew that their conduct and actions would lead to increased danger, risk of injury, and resulting emotional distress to the Plaintiffs.  The Defendants knew that the failure to implement adequate safety and security measures would place passengers and crew in unreasonable danger and subject them to emotional distress.  The failure to act in the face of this risk constitutes reckless, grossly negligence, willful, wanton conduct.

136.    The actions of Defendants were in blatant negligent disregard for the rights and lives of those killed and their surviving loved ones.

137.    The acts omissions, and conduct of Defendants were undertaken in an outrageous manner.  The course of conduct of the aviation industry was such that it was reasonably foreseeable to result in the death, injury and suffering of innocent people.  The repeated and intentional failure or refusal to implement adequate security culminated in the death and injury of innocent people on September 11, 2001, including Mark Bavis, causing continuing, permanent, emotional, mental and physical suffering to the decedent and to the Plaintiffs.

138.    As a direct and proximate cause of Defendants' willful, wanton, grossly negligent and/or reckless misconduct and disregard for safety in breach of their duty, Plaintiffs have suffered severe emotional distress, physical and psychiatric injury.

27

139.    The Plaintiffs have suffered and will continue to suffer mental anguish, grief and loss, loss of companionship, and pain and suffering damages.

## JURY DEMAND

140.    Plaintiffs demand a trial by jury of all issues that are so triable.

## REQUEST FOR RELIEF

WHEREFORE, having complained of the conduct of the Defendants, the Plaintiffs pray for relief commensurate with the causes of action set forth herein, including but not limited to an award of actual damages in an amount determined by the trier of fact to be sufficient to compensate fully for all losses suffered by the Plaintiffs, an award of punitive damages, in an amount determined to be sufficient to hold the defendants accountable for their part in this tragedy, to express the seriousness of their conduct, and to deter such similar conduct in the future, reasonable attorney's fees, the expenses and costs of this action, and such additional relief as this Court deems just and proper.

**HANLY & CONROY LLP**

By:    _____

        Paul J. Hanly, Jr., Esquire (PH-5486)
        Jayne Conroy, Esquire (JC-8611)
        415 Madison Avenue
        New York, NY 10017-1111
        Telephone: (212) 401-7600

and

**MOTLEY RICE LLC**

By:    _____

        Michael E. Elsner, Esquire (ME-8337)
        Ronald L. Motley, Esquire
        Don Migliori, Esquire

28

Jodi Westbrook Flowers, Esquire
Mary Schiavo, Esquire
Jeff Thompson, Esq.
Motley Rice LLC
28 Bridgeside Boulevard
Post Office Box 1792
Mount Pleasant, SC 29465
Telephone:  (843) 216-9000

January 14, 2004.